# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

AMERICAN RAILWAY EXPRESS COMPANY *vs.* MOHAWK DAIRY COMPANY.

Suffolk.   March 6, 1924. — September 19, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Express Company. Carrier*, Of goods. *Contract*, What constitutes. *Agency*, Existence of relation, Scope of authority.   *Custom.*

A milk producer with places of business in a town in New Hampshire and at Boston in this Commonwealth shipped cream in cans by an express company from Boston to a customer in New York in accordance with a custom by which the empty cans should be returned to him in Boston by the express company free of charge.   Over one half of the cans, which bore the name of the milk producer and his Boston address, were returned to Boston by the express company free of charge; the remainder, bearing a tag with the name of the producer and his New Hampshire address, were delivered by the customer in New York to the express company with directions to ship to the New Hampshire address, charges "collect," a "uniform express receipt," without general conditions or stipulations, being issued therefor to the customer by the express company.   The producer made inquiry at the town in New Hampshire, whether any cans had arrived, and, upon their arrival, denied liability for transportation charges and refused to accept the cans.   The express company's classification under the interstate commerce act specified that on "empty carriers," which term described the shipment to the New Hampshire town, "charges must be prepaid unless an agreement has been made with the owner of the carriers, whereby they may be returned with charges 'to collect,'" and that empty cans returned by the company which carried them "must be

returned free." In an action by the express company against the producer for the transportation charges, the trial judge on the foregoing evidence ordered a verdict for the plaintiff and reported the action to this court upon the stipulation that, if the verdict properly was ordered, judgment should be entered thereon and that otherwise judgment should be entered for the defendant. *Held,* that

(1) Since the interstate commerce act imposed no liability on a particular party to pay charges, the carrier and the shipper (the producer's customer) were left free to contract, subject to the rule which prohibited discrimination;

(2) While the "uniform express receipt" stated the rights and obligations of the parties so far as they were stated anywhere in writing, and it was plain that the producer's customer and the carrier by the use of the word "collect" had intended that the producer should pay the transportation charges, the producer could not be held to such obligation unless he had authorized his customer to act for him or by his conduct had rendered himself liable;

(3) There was nothing in the record before this court which showed that the producer by his conduct with respect to the shipment had assumed that obligation;

(4) The subject of return of empty cans after the contents had been removed was a proper subject for custom;

(5) While ownership was an important factor in connection with others in determining liability for the transportation charges, the mere fact of ownership, by itself alone, was not enough to render the owner liable for such charges as a matter of law;

(6) The producer's customer had no authority to ship the cans to any other place than Boston, and the shipment made was not made with the producer's authority;

(7) Since under its regulations the express company could collect from the producer only by showing an agreement to that effect with him and no such agreement was shown, it could not rightly be ruled as matter of law that the plaintiff was entitled to recover;

(8) Upon the terms of the report, judgment must be entered for the defendant.

CONTRACT for transportation charges on two shipments of empty cans from the city of New York to Colebrook, New Hampshire, and for war tax and charges for storage of the cans after the defendant had refused to accept delivery. Writ in the Municipal Court of the City of Boston dated March 30, 1922.

On removal to the Superior Court, the action was tried before *Irwin,* J. Material evidence is described in the opinion. At the conclusion of the evidence, both parties agreed that there was no issue for the jury and each party requested the trial judge to order the jury to return a ver-

dict in its favor. The judge granted the plaintiff's motion, ordered the jury to return a verdict for the plaintiff in the sum of $558.62, and reported the action to this court, it being stipulated that, if upon the evidence a verdict for the plaintiff properly was ordered, judgment was to be entered upon the verdict; otherwise, judgment was to be entered for the defendant.

*F. A. Pierce,* for the defendant.

*A. M. Pinkham,* for the plaintiff.

RUGG, C.J. This is an action of contract by a common carrier to recover charges for transportation of two shipments of empty milk cans from New York, in the State of New York, to Colebrook, in the State of New Hampshire.

Facts agreed at the trial were: that the plaintiff was a common carrier in interstate commerce and prior to the crucial dates had filed with the interstate commerce commission its schedules of rates, rules and regulations applicable thereto; that the defendant owned the milk cans shipped from New York to Colebrook, and that the shipments were made by the Reid Ice Cream Company and were carried by the plaintiff from New York to Colebrook, where they were offered for delivery to the defendant which refused to accept them.

There was testimony to the effect that the defendant had one place of business at Colebrook, New Hampshire, and another a' ton in this Commonwealth; that the defendant ser nents of cream from Boston to the Reid Ice Cream Company in New York City in cans belonging to the defendant marked with brass tags bearing its initials; that in 1921, prior to the shipments here in question, it had sent six shipments of cans which had originally come from Colebrook, New Hampshire, by freight to Cambridge, Massachusetts, where they were taken by the defendant in its own trucks to Boston and there shipped by it through the plaintiff to the Reid Ice Cream Company in New York, the defendant prepaying express charges for transportation and receiving the plaintiff's uniform express receipt in each instance. The defendant gave the Reid Ice Cream Company no instructions as to returning the empty cans, but expected that

the cans, being sent to and in the hands of the Reid Ice Cream Company, would be returned to Boston by express free of charge, " that is the way of the trade "; that it was not necessary in the milk and cream industry to give instructions as to the method by which empty cans should be returned. Out of a total of one thousand five hundred seventy-five cans thus shipped from Boston to New York, all except seven hundred twenty-five cans, which went to Colebrook, and charges on which are the subject of this action, came back to Boston over the lines of the plaintiff free of charge, each bearing at the time of return tags on which was:

MOHAWK DAIRY CO BOSTON MASS

---

THE REID ICE CREAM CO
Brooklyn — New York — Jersey City

The cans which were sent to Colebrook bore a tag of this tenor:

MOHAWK DAIRY COMPANY
Colebrook, N. H.
GRADE B CREAM
Pasteurized Oct 12 1921

The two shipments of empty cans, charges for transportation of which are here in suit, were delivered to the plaintiff at its place of business in New York by the Reid Ice Cream Company as shipper to whom the original " uniform express receipt " in each instance was given. Each of the receipts bore on its face the word " COLLECT." The first receipt stated that the plaintiff had " Received from Reids Ice Cream Address Brooklyn . . . 152 Empty Milk Cans Consigned to Mohawk Dairy Co. At Colebrook N. H." The agent for the plaintiff testified that the first receipt was signed by himself as agent for the plaintiff, and that he wrote the words in the place for the signature of the shipper because the truck driver who delivered the cans did not wait and he had to give him the receipt. The receipt for the second shipment was signed by the driver of the Reid Ice Cream Company as shipper, but in other respects, except for num-

bers of cans, the two receipts were of the same tenor. He also testified that he did not know that the cans had come from Boston or from any other place. " Material extracts " from the official express classification No. 27 and Supplement No. 3 thereto, alone are in the record. They are as follows:

"American Railway Express Company

In connection with Canadian Express Company, Canadian National Express Company, Dominion Express Company, Newfoundland Express Company,

---

Official Express Classification No. 27
and Supplement No. 3

RULES.

1 — Application of Rates and Charges:

(a) First Class Rates are applicable to all property received for transportation by the Companies parties to this Classification, unless otherwise hereinafter provided . . . . . .

Page 32.

21 EMPTY CARRIERS — OTHER THAN RETURNED:

Empty Carriers, New or Old, Not Otherwise Specified, when the transportation is not a return movement, must be charged gross weight at the rate applicable on the commodity shipped in such carriers, but the rate per 100 lbs. applied must not be more than the First-Class rate. Subject to the rules and minimum charges applicable to the commodity transported in such Carriers when they are filled.

(The foregoing was amended by Supplement No. 3, as follows:) Page 32, Item 21-A, cancels Item 21, Page 32 of Classification

(A) EMPTY CARRIERS, OTHER THAN RETURNED:

Class

Empty Carriers, new or old, Not Otherwise Specified, when the transportation is not a return movement . . . . . . . . . . . . . . . . . . . . . . .    1

(A) Denotes increase.

Page 32.

24 EMPTY CARRIERS RETURNED:

Page 32, Item 24-A, cancels Item 24, Page 32 of Classification.

(A) EMPTY CARRIERS RETURNED:

> Charges must be prepaid unless an agreement has been made with the owner of the carriers, whereby they may be returned with charges ' to collect.'
>
> The charges given hereinafter, unless otherwise provided, cover the transportation of Returned Empty Carriers which were shipped when full over the Lines of the Company or Companies by which they are returned from original destination or, when reshipped from final destination to the point from which the filled carriers were originally shipped. The charges defined include wagon service within established delivery limits at points where such service is maintained, unless otherwise provided.

10. Cream and Milk Empties:

Cans                            each 15c.

> Empty Cans returned by the Company which carried them, when full must be receipted for and, when delivered at the depot by the shipper and taken from the depot by the consignee, must be returned free."

This being an action respecting charges for transportation in interstate commerce, the issues must be decided according to the paramount United States statutes, so far as they are applicable. Where not controlled by such statutes, the rights of the parties are to be adjusted according to the relevant principles of the common law. The interstate commerce act imposes no obligation upon a particular party to pay transportation charges. The tariff does not provide by whom such charges must be borne. So far as disclosed on this record, " As to these matters carrier and shipper were left free to contract, subject to the rule which prohibits discrimination." *Louisville & Nashville Railroad* v. *Central Iron & Coal Co.* 265 U. S. 59.

No contention arises in the case at bar as to the amount due to the plaintiff as carrier, if the defendant is under lia-

bility. The lawful rate as established by the rates and schedules filed by the carrier must be collected. *New York, New Haven & Hartford Railroad* v. *York & Whitney Co.* 215 Mass. 36, 39.

The parties agreed in the Superior Court that there was no issue of fact for the jury. Each party requested that a verdict be directed in its favor. The case has been presented and argued to us by both parties on the theory that a pure question of law is raised. It is considered and decided on that footing. *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink*, 250 U. S. 577. *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 256 U. S. 406, 408.

No bill of lading was issued by the plaintiff as carrier. It fairly is inferable that no bill of lading is issued in the express business of the plaintiff. The case at bar is therefore distinguishable from decisions like *New York Central Railroad* v. *Ross Lumber Co.* 234 N. Y. 261, where the relations of the parties were governed in part at least by the provisions of the standard bill of lading for transportation of freight. The rights and obligations of the parties, so far as put in writing, are stated in the uniform express receipt issued by the plaintiff. That receipt is printed in full in the record. It is short. It contains no general conditions or stipulations. Its words, so far as of consequence in this connection, already have been quoted. That receipt, by the word " collect " on its face, indicates that the shipper and the carrier intended that the consignee should pay the charges. If and so far as the shipper and carrier could bind the defendant as consignee and owner, to pay the charges, they undertook to do so. The defendant cannot be held to such obligation unless it authorized the shipper to act for it or has by its own conduct rendered itself liable. There is nothing in the record which shows that by its conduct with respect to the shipment it has assumed that obligation. It refused to receive or accept the goods. It denied liability for transportation charges. The inquiry of the agent of the plaintiff at Colebrook by the agent of the defendant, whether any cans had come, falls far short of establishing such obligation. The question in its last analysis is, whether the defendant

authorized the Reid Ice Cream Company as shipper to act with reference to its cans so that the plaintiff can hold the defendant for the charges of transportation. The answer to that question involves consideration of certain general principles and certain specific facts appearing in this record.

In its essential legal features, viewed as a contract alone, the receipt issued by the plaintiff to the Reid Ice Cream Company does not differ from a bill of lading issued by a carrier of freight to the shipper. The nature of such a contract is discussed at large by Chief Justice Shaw in *Blanchard* v. *Page*, 8 Gray, 281. The implication arising from the relations of the parties and the transaction, in the absence of a definite stipulation on the point, is that the carrier agrees to carry the goods and the shipper agrees to pay the required compensation for the service of transportation. *Wooster* v. *Tarr*, 8 Allen, 270. *Union Freight Railroad* v. *Winkley*, 159 Mass. 133. The same general rule prevails as to interstate shipments. It was said in *Louisville & Nashville Railroad* v. *Central Iron & Coal Co. supra*, " Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability." *Central Railroad* v. *MacCartney*, 39 Vroom, 165. *Northern Pacific Railway* v. *Pleasant River Granite Co.* 116 Maine, 496, 498. *Montpelier & Wells River Railroad* v. *Bianchi & Sons*, 95 Vt. 81.

The plaintiff does not dispute this proposition. It bases its right to recover on the facts (1) that the defendant was owner of the goods transported; (2) that the defendant as owner had entrusted the goods to the shipper and that the latter was its agent for making the contract of transportation.

The mere fact of ownership of goods shipped, by itself alone, is not enough to render the owner liable for the just charges of transportation made by a common carrier. The goods may be shipped without the knowledge or consent of the owner or under other circumstances which cannot impose liability. Ownership is important in connection with other factors in determining liability for transportation charges, but apart from other considerations it is not decisive. See *Boston & Maine Railroad* v. *National Orange Co.* 232 Mass. 351.

The consignee in contracts for transportation of goods by a common carrier is presumptively the owner of the goods. *Rosenbush* v. *Bernheimer*, 211 Mass. 146, 149. Where there is express contract binding on him or necessary implication to that effect, the consignee is liable for the charges of transportation. In the absence of such facts, the consignee is not liable for such charges. The obligation of the consignee to pay the charges of transportation commonly rests on acceptance of the goods when the transportation has ended. That obligation is coextensive with the charge legally due, no matter what may be the statement of that charge by the carrier. That obligation springs from the acceptance and receipt of the goods in the ordinary case and apart from other controlling factors. *New York, New Haven & Hartford Railroad* v. *York & Whitney Co.* 215 Mass. 36, 39. *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink*, 250 U. S. 577, 582. *New York Central Railroad* v. *Ross Lumber Co.* 234 N. Y. 261. *Chicago, Milwaukee & St. Paul Railway* v. *Greenberg*, 139 Minn. 428. *Waters* v. *Pfister & Vogel Leather Co.* 176 Wis. 16.

The salient factors in the case at bar are that the defendant was the owner of milk cans transported by the plaintiff and had shipped them by the plaintiff from Boston to the defend-

ant's customer in New York, whose duty, arising out of that relationship, was to cause them to be returned to the defendant at Boston by the plaintiff free of charge; the plaintiff had established classifications under the interstate commerce law, which specified that on " Empty Carriers" (an accurate description of the cans shipped to Colebrook) "Charges must be prepaid unless an agreement has been made with the owner of the carriers, whereby they may be returned with charges ' to collect,' " and that empty cans returned by the company which carried them " must be returned free." The plaintiff, the defendant and the shipper must be bound by the terms of the " Official Express Classification " duly filed by the plaintiff under the law, whether the individuals dealing with the goods in truth knew its terms, or not. The Reid Ice Cream Company, as consignee of the cans when filled with cream on the initial shipment from the defendant at Boston to New York and as shipper of the same cans when it had emptied them, was bound by those terms. The shipment of the empty cans from New York to Colebrook was contrary to the understanding of the defendant and contrary to the custom of the trade between the defendant and its customer. The subject of return of empty cans after the contents have been used is a proper subject for custom. *Dickinson* v. *Gay,* 7 Allen, 29. *Conahan* v. *Fisher,* 233 Mass. 234, 239–242, and cases there collected. *The Turid,* [1921] P. 146. *Scott* v. *Pattison,* [1923] 2 K.B. 723, 727. The conduct of the Reid Ice Cream Company, therefore, was in violation of its contract with the defendant. The latter gave no instructions to ship the cans to Colebrook, but on the contrary authorized only a return shipment to Boston without charge. The tag on the cans cannot be regarded as matter of law as a shipping direction. There was nothing on it about return of the can. Its manifest purpose was to describe the contents of the can. In connection with the brass tag with the initials of the defendant, which we infer continued on the cans, it was some indication of ownership of the cans. Whatever agency was conferred upon the Reid Ice Cream Company by the defendant did not reach beyond the custom of the trade. The defendant justly might rely on the official

classification of the plaintiff that it would not be held liable as consignee of the empty cans for any transportation charge unless an agreement to that effect was made with it, and that under the same classification it rightly might expect the return of the cans free to Boston, the point of the initial shipment. The Reid Ice Cream Company had the rightful possession of the cans under a duty to return them free to the place from which they were shipped. This possession did not clothe that company with the real authority to ship them to a different place with charges to be collected of the defendant. If an agency at all, it was of a very limited and restricted nature. A principal is bound by the ostensible authority with which he clothes his agent, whatever may be the limitations of that authority as between them. *Brooks* v. *Shaw*, 197 Mass. 376. The agent of limited powers cannot stretch them to include subjects not within their apparent scope. Persons dealing with an agent of obviously limited powers are bound to act accordingly. *Royle* v. *Worcester Buick Co.* 243 Mass. 143. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327. *T. D. Downing Co.* v. *Shawmut Corp. of Boston*, 245 Mass. 106, 114. *Nelson* v. *Imperial Water Proof Co. Ltd.* 224 Mass. 388. *Fleischner* v. *Durgin*, 207 Mass. 435. *Harrigan* v. *Dodge*, 216 Mass. 461. *Cohen* v. *Jackson*, 210 Mass. 328. *Hosher-Platt Co.* v. *Miller*, 238 Mass. 518, 523. *Stegman* v. *Sturtevant & Haley Beef & Supply Co.* 243 Mass. 269. *Seaboyer* v. *Director General of Railroads*, 244 Mass. 122, 124. The plaintiff was bound to know that empty milk cans must be returned free to place of initial shipment. It might have protected itself fully by collecting its charges in advance. Under its own regulations it can collect of the defendant only by showing an agreement to that effect with the defendant as owner. It fails to show such agreement. The testimony of the agent of the plaintiff who received the cans from the shipper at New York, to the effect that he did not know whether they had come from Boston or any other place, is not decisive. It was the plaintiff's duty under its official classification to collect charges in advance, unless it had an agreement with the owner to collect the charges at the end of the transportation. The defendant

had a right to rely upon the performance of that duty by the plaintiff. In any event charges cannot be collected of the defendant in the absence of obligation on its part to pay them.

All these circumstances in combination do not render the defendant liable to the plaintiff. Without emphasizing one fact above another on the present record, we are of opinion that it could not rightly have been ruled as matter of law that the plaintiff was entitled to recover.

In accordance with the stipulation and report, the entry may be,

*Judgment for the defendant.*