TELLY B. TURNER, trustee, *vs.* NATHANIAL GUY.

Bristol. April 8, 1974. — June 7, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Equity Jurisdiction,* Laches, Rescission. *Broker,* Fiduciary duty. *Fiduciary. Equity Pleading and Practice,* Amendment.

In a suit in equity originally for rescission of a conveyance of real estate by the plaintiff to the defendant and for damages, where the claim to rescission was waived, a ruling that the plaintiff was not entitled to relief in equity by reason of laches was proper in view of delay of the plaintiff in bringing the suit and considerable expenditures by the defendant in renovating the property before the suit was brought. [345-347]

In a suit in equity originally for rescission of a conveyance of real
    estate by the plaintiff to the defendant, and for damages, based
    on an alleged breach by the defendant of a fiduciary duty as a
    broker to the plaintiff, where the claim for rescission was waived
    and the judge found such a breach of duty by the defendant, but
    ruled that the plaintiff was not entitled to relief in equity by rea-
    son of laches and entered a decree dismissing the bill, this court,
    in the circumstances, since the plaintiff might be entitled at law
    to damages for the breach of duty by the defendant, gave the
    plaintiff leave to amend the suit into an action at law within a
    specified time; otherwise the decree was to be affirmed.  [347-348]

BILL IN EQUITY filed in the Superior Court on Octo-
ber 6, 1969.

The suit was heard by *Campbell,* J.

*Ralph D. Lider* (*Bruce W. Lider* with him) for the
plaintiff.

*Peter F. Staiti,* for the defendant, submitted a brief.

HALE, C.J.   This is an appeal from a final decree
dismissing the plaintiff's bill in equity.[1]   The evidence
is reported, and there is a report of material facts.   See
*Barnum* v. *Fay,* 320 Mass. 177, 180 (1946).

We summarize the facts found by the judge together
with additional facts not specifically found by him which
we find from the record and which we consider material.
See *Boston* v. *Pagliaro,* 1 Mass. App. Ct. 117 (1973).
The plaintiff, as trustee under the will of her mother,
owned three houses in New Bedford.   On May 13, 1968,
she met with the defendant, a local real estate agent, and
informed him that she wished to sell the three properties
as soon as possible.   She expressed her wish that the three
properties be sold together, although the defendant told
her that a better price could be secured if they were sold
separately.   The defendant suggested that, as a "rule of
thumb," the market value of the properties would be

---

[1] The plaintiff has also claimed an appeal from the trial judge's
findings, rulings, and order for decree.   Such an appeal is not known
to equity practice, and we disregard it.   *Gulesian* v. *Newton Trust
Co.* 302 Mass. 369, 372 (1939), and cases cited.

equal to five times their gross income, or $17,500. The parties then signed an agreement under which the defendant, acting as the plaintiff's sole and exclusive agent, would undertake to secure a buyer for $17,500 and would receive a six per cent commission on the sale.

After meeting with the plaintiff, the defendant visited and inspected the properties. The following day he told the plaintiff that he would be willing to enter into an option agreement to buy the houses for $16,000. The plaintiff assented and an option agreement was executed. That document provided, among other things, that the agency agreement between the parties was terminated. On May 22, 1968, the defendant paid the plaintiff $500 in exercise of the option.

During the summer of 1968, before title to the properties was passed, the plaintiff learned that the properties had been valued at $25,000 in 1964 for inheritance tax purposes. The plaintiff consulted with counsel and expressed dissatisfaction with the price agreed to in the option agreement. Late in 1968 an appraiser advised the plaintiff that the market value of the properties was $29,500. The plaintiff's attorney offered to return the $500 payment to the defendant if he would release her from the option agreement, but the defendant refused to do so, stating that he would sue on the agreement if the plaintiff refused to honor it.

On April 23, 1969, the plaintiff conveyed the properties to the defendant. The balance of the purchase price agreed upon ($15,500) was paid by the defendant from the proceeds of an $18,000 bank loan secured by a mortgage on the properties. Shortly after taking title to the properties the defendant advertised them for sale. The listed price was $33,000. The defendant also renovated the properties in order to correct housing code deficiencies cited by the Division of Minimum Housing.

The plaintiff filed her bill in equity on October 6, 1969; the bill contained a prayer for rescission, for an accounting, and for further relief. At the conclusion of

the trial she waived her prayer for rescission and requested the award of damages only. The judge ruled that the defendant, by failing to disclose to the plaintiff the several factors which led him to conclude that the properties would be a profitable investment if they could be acquired for $16,000, violated the fiduciary duty he owed the plaintiff. However, the judge also ruled that the plaintiff was not entitled to relief from a court of equity. He found and ruled "that the plaintiff is now barred from recovery by laches, having slept on her rights, and having caused the defendant to change his position to his detriment by her failure to indicate to him that she intended to repudiate the agreement."[2] Accordingly, he ordered the bill dismissed.

Our opinion is that, on the facts found, the proper decree was entered. Although we disagree with the judge's ruling that the option contract was "for all practical purposes, executory when the defendant's improper action was discovered" (see *Geoffrion* v. *Lucier*, 336 Mass. 532, 536 [1957]), we are of the opinion that such ruling did not affect the propriety of the final decree. The judge's conclusion that the plaintiff was not entitled to relief from a court of equity was warranted. Although, by reason of the plaintiff's waiver of her prayer for rescission and her election to proceed solely on the issue of damages, the relief sought was purely legal in nature, the proceeding remained a suit in equity. See *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 608 (1934). By choosing to file a bill in equity, the plaintiff voluntarily submitted herself "to all the incidents of equity practice. . . ." See *Matsushita Elec. Corp. of America* v. *Sonus Corp.* 362 Mass. 246, 253 (1972). As there was evidence that the defendant had gone to

---

[2] The defendant did not plead laches. The power of the court, sua sponte, to deny relief upon that ground in its discretion, in appropriate circumstances, is not questioned. See *Stewart* v. *Joyce,* 201 Mass. 301, 307 (1909); *Swartz* v. *Clayton,* 327 Mass. 254, 256 (1951).

considerable expense to improve the properties before the plaintiff filed her bill, the finding of laches was warranted; the plaintiff's delay in bringing suit worked to the detriment of the defendant. See *Stewart* v. *Finkelstone,* 206 Mass. 28, 36 (1910); *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 69 (1929). Moreover, as the plaintiff, by reason of her own inequitable conduct, would not have been entitled to rescission, she was not entitled to damages in the equity proceeding, as it was only on the basis of rescission that she would have been entitled to a favorable decree. See *Yoffa* v. *National Shawmut Bank,* 288 Mass. 422, 427 (1934), citing *Ginn* v. *Almy,* 212 Mass. 486, 502 (1912). See also *Labagnara* v. *Kane Furniture Co.* 289 Mass. 52, 55 (1935).

In this case, however, the judge ruled that the defendant violated the fiduciary duty owed by a broker to his principal by failing to disclose all facts material to the transaction. For that reason we are not convinced that the plaintiff would not be entitled to relief in an action at law. See *Ebert* v. *Haskell,* 217 Mass. 209, 211 (1914); *Reed* v. *A. E. Little Co.* 256 Mass. 442, 449 (1926); Prosser, Torts (4th ed.) § 106; Restatement: Torts § 551 (2); Restatement: Agency 2d §§ 381, 390; Restatement: Restitution § 8 (1)(b). See also *Delaney* v. *Doyle,* 267 Mass. 171, 176 (1929); *Maxwell* v. *Ratcliffe,* 356 Mass. 560, 562-563 (1969); *Gishen* v. *Dura Corp.* 362 Mass. 177, 183-185 (1972); Annot. 164 A. L. R. 1378 (1946).

Accordingly, we think the circumstances of this case present a proper opportunity for us to permit the plaintiff, if she should so desire, to amend her action into one at law. Our Supreme Judicial Court has indicated that in situations where, as here, "a case ceases to possess any attributes of a suit in equity, and becomes in fact an action at law, it is appropriate that it be so amended as to form, preferably on motion of a party, but if necessary on the initiative of the court." *Matsushita Elec. Corp. of America* v. *Sonus Corp.* 362 Mass. 246, 251 (1972). We think the interests of justice will best be served if such an

amendment is permitted in this case.   See *Jones* v. *Bailey*, 1 Mass. App. Ct. 41, 45-46 (1973), and cases cited; G. L. c. 231, §§ 55 and 125; G. L. c. 211A, §§ 5 and 10.   See also *Adams* v. *Silverman*, 280 Mass. 23, 30 (1932).   The plaintiff is given leave to amend her suit in equity into an action at law within thirty days after rescript.   Otherwise, the final decree is to be affirmed.

*So ordered.*